UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, | : | Master File No.: |
| STATE LAW, and INSURANCE | : | 08 Civ. 11117 (TPG) |
| LITIGATION | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| This Document Relates to:  Securities Actions | : | ECF CASE |
| 08 Civ. 11212 (TPG) | : | Electronically Filed |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE TREMONT DEFENDANTS' MEMORANDUM OF
## LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Seth M. Schwartz
Susan L. Saltzstein
Michael H. Gruenglas
Jason C. Vigna
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont Capital Management,
Rye Investment Management,
Robert Schulman, Rupert Allan and
Jim Mitchell

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT....................................................................................... 1

SUMMARY OF ALLEGATIONS ................................................................................. 2

ARGUMENT ................................................................................................................. 8

I.      PLAINTIFFS FAIL TO STATE A CLAIM  UNDER SECTION 10(b) OF THE EXCHANGE ACT .......................................................................... 8

      A.      Plaintiffs Have Not Adequately Pled A Material Misrepresentation.................... 8

      B.      Plaintiffs Have Not Adequately Pled Scienter...................................................... 11

      C.      Plaintiffs Have Not Adequately Pled Justifiable Reliance .................................. 14

      D.      Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe" Doctrine ................................................................................................................ 15

      E.      Plaintiffs' Securities Fraud Claims Related To The Market Neutral Fund Are Time-Barred ....................................................................................... 16

II.     PLAINTIFFS FAIL TO STATE A "CONTROL PERSON"  CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT.................................................. 16

III.    PLAINTIFFS' CLAIMS ARE BARRED BY SLUSA.................................................... 17

IV.    PLAINTIFFS' STATE LAW CLAIMS ARE BARRED  BY THE PARTNERSHIP AGREEMENTS' EXCULPATION PROVISIONS ............................ 18

V.     PLAINTIFFS LACK STANDING TO ASSERT STATE LAW CLAIMS BELONGING TO THE FUNDS.................................................................................... 20

VI.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION, BREACH  OF FIDUCIARY DUTY, GROSS MISMANAGEMENT AND  UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE MARTIN ACT............................ 20

VII.   PLAINTIFFS' STATE LAW CLAIMS  ARE OTHERWISE LEGALLY DEFICIENT ................................................................................................................. 21

      A.      Plaintiffs' Fraud Claim Fails Adequately To Allege A Material Misstatement, Fraudulent Intent Or Justifiable Reliance ...................................... 21

B.   Plaintiffs' Negligent Misrepresentation Claim Is Indisputably Barred By The Partnership Agreements' Exculpation Provisions ........................21

C.   Plaintiffs State No Claim Of Breach Of Fiduciary Duty.......................................22

D.   Plaintiffs State No Claim Of "Gross Negligence And Mismanagement" ................................................................................................22

E.   The LPAs Preclude Plaintiffs' Unjust Enrichment Claim ....................................23

F.   Plaintiffs Cannot Demonstrate That The Tremont Defendants Proximately Caused Their Losses ........................................................................23

CONCLUSION ................................................................................................................24

# TABLE OF AUTHORITIES

## CASES

Aboushanab v. Janey,
    No. 06 Civ. 13472, 2007 WL 2789511 (S.D.N.Y. Sept. 26, 2007)....................................20

ATSI Communications, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................9, 16

Atuahene v. City of Hartford,
    10 F. App'x 33 (2d Cir. 2001) .........................................................................................19

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
    No. 03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ............................19, 23

In re Bayou Hedge Fund Litigation,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ........................................................................14, 19

Bello v. New England Financial,
    3 Misc. 3d 1109(A) (table), 2004 WL 1305515
    (Sup. Ct. Nassau County May 20, 2004) .........................................................................23

Biesenbach v. Guenther,
    588 F.2d 400 (3d Cir. 1978)......................................................................................15, 16

Boguslavsky v. Kaplan,
    159 F.3d 715 (2d Cir. 1998).............................................................................................17

Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,
    98 F.3d 13 (2d Cir. 1996).................................................................................................21

In re Citigroup Inc. Shareholder Derivative Litigation,
    964 A.2d 106 (Del. Ch. 2009) ...................................................................................19, 22

In re Citigroup, Inc. Securities Litigation,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) .............................................................................15

In re Corning, Inc. Securities Litigation,
    349 F. Supp. 2d 698 (S.D.N.Y. 2004) ......................................................................16, 17

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
    553 F.3d 187 (2d Cir. 2008)........................................................................................8, 10

First Lincoln Holdings, Inc. v. Equitable Life Assurance Society of the United States,
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) .............................................................................14

GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,
    449 F.3d 377 (2d Cir. 2006)...................................................................21

Gordon Partners v. Blumenthal,
    293 F. App'x 815, 818 (2d Cir. 2008).............................................21

Halperin v. eBankerUSA.com, Inc.,
    295 F.3d 352 (2d Cir. 2002).......................................................9, 10

Hart v. Internet Wire, Inc.,
    50 F. App'x 464 (2d Cir. 2002) .......................................................13

Henneberry v. Sumitomo Corp. of America,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ......................................9, 11

Henry v. Merck & Co.,
    877 F.2d 1489 (10th Cir. 1989)......................................................24

Industrial Risk Insurers v. Port Authority of New York & New Jersey,
    387 F. Supp. 2d 299 (S.D.N.Y. 2005) .....................................19, 23

Kalin v. Xanboo, Inc.,
    No. 04 Civ. 5931, 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009).....................................17

Kalnit v. Eichler,
    264 F.3d 134 (2d Cir. 2001).......................................................12, 13

Koch v. Greenberg,
    No. 07 Civ. 9600, 2008 WL 4450273 (S.D.N.Y. Sept. 30, 2008)..................................22

Lampf, Pleva, Lipkind, Propis & Petigrow v. Gilbertson,
    501 U.S. 350 (1991)........................................................................16

In re Lear Corp. Shareholder Litigation,
    967 A.3d 640 (Del. Ch. 2008) ........................................................18

Lee v. Marsh & McLennan Cos.,
    17 Misc. 3d 1138(A) (table), 2007 WL 4303514
    (Sup. Ct. Nassau County Dec. 7, 2007) .........................................22

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005)............................................................ 2

Lyondell Chemical Company v. Ryan,
    -- A.2d --, 2009 WL 1024764 (Del. Mar. 25, 2009)......................19

Medis Investor Group v. Medi Technologies, Ltd.,
    586 F. Supp. 2d 136 (S.D.N.Y. 2008) .............................................................................11

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) .............................................................................. 2

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993)...........................................................................................10

Morse v. Weingarten,
    777 F. Supp. 312 (S.D.N.Y. 1991) .................................................................................21

Murray v. Xerox Corp.,
    811 F.2d 118 (2d Cir. 1987)...........................................................................................21

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)...........................................................................................12

In re Optionable Securities Litigation,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) .............................................................................11

In re PXRE Group, Ltd. Securities Litigation,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................................................... 12, 13, 14, 17

Port Authority of New York & New Jersey v. Arcadian Corp.,
    189 F.3d 305 (3d Cir. 1999)...........................................................................................24

Rich v. Maidstone Finance, Inc.,
    No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001)................................13, 17

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)...........................................................................................10

Santa Fe Industries, Inc. v. Green,
    430 U.S. 462 (1977).......................................................................................................15

Schnorr v. Schubert,
    No. CIV 05-303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005)...................................18

Sedona Corp. v. Ladenburg Thalmann & Co.,
    No. 03Civ.3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005).........................................20

Shields v. Citytrust Bancorp., Inc.,
    25 F.3d 1124 (2d Cir. 1994)..............................................................................9, 11, 12

In re Sotheby's Holdings, Inc.,
    No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)....................................17

Steed Finance LDC v. Nomura Securities International, Inc.,
    No. 00 Civ. 8058, 2004 WL 2072536 (S.D.N.Y. Sept. 14, 2004)....................................15

Stegall v. Ladner,
    394 F. Supp. 2d 358 (D. Mass. 2005) .............................................................................. 8

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)........................................................................................................8, 14

Trump v. Cheng,
    862 N.Y.S.2d 812 (table), 2005 WL 2738344
    (Sup. Ct. N.Y. County Sept. 14, 2005) ...........................................................................21

US West Financial Services, Inc. v. Tollman,
    786 F. Supp. 333 (S.D.N.Y. 1992) ..................................................................................22

In re Walt Disney Co. Derivatives Litigation,
    906 A.2d 27 (Del. 2006) ...........................................................................................18, 19

Ward v. State,
    81 Misc. 2d 583, 366 N.Y.S.2d 800 (Ct. Cl. 1975) ........................................................24

Waxman v. Envipco Pick Up & Processing Services, Inc.,
    No. 02 Civ. 10132, 2003 WL 22439796 (S.D.N.Y. Oct. 28, 2003)..................................15

Wood v. Baum,
    953 A.2d 136 (Del. 2008) ...............................................................................................19

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998)............................................................................................. 8

## STATUTES

15 U.S.C. § 78bb(f)(5)(B)...................................................................................................18

15 U.S.C. § 78bb(f)(5)(E)...................................................................................................18

15 U.S.C. § 78u-4(b)(1)(B)..................................................................................................10

15 U.S.C. § 78u-4(b)(2)....................................................................................................... 1

28 U.S.C. § 1658(b) ...........................................................................................................16

Fed. R. Civ. P. 9(b)........................................................................................................1, 8

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

N.Y. General Business Law § 352, *et seq.* (McKinney 2009)....................................................20

N.Y. Partnership Law § 121-901 (McKinney 2006)....................................................................22

Defendants Tremont Partners, Inc. ("TPI"), Tremont Group Holdings, Inc. ("TGH"), Tremont Capital Management ("TCM"), Rye Investment Management ("RIM"), Robert Schulman, Rupert Allan and Jim Mitchell (collectively, the "Tremont Defendants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Section 101(b) of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2), dismissing the Consolidated and Amended Class Action Complaint in this action (the "Complaint") as against the Tremont Defendants.

## PRELIMINARY STATEMENT

This is a putative class action asserting both federal securities law and pendent state law claims. The proposed class is comprised of holders of limited partnership interests in a number of hedge funds organized as limited partnerships under Delaware law. The funds are Rye Select Broad Market Fund, L.P. ("Broad Market Fund"), Rye Select Broad Market Prime Fund, L.P. ("Prime Fund"), Rye Select Broad Market XL Fund, LP ("XL Fund") and Tremont Market Neutral Fund, L.P. ("Market Neutral Fund") (collectively, the "Funds"). TPI is the general partner of each Fund, and invested the Fund's assets with Bernard Madoff before learning of Madoff's Ponzi scheme along with the rest of the world on December 11, 2008.

With Madoff in jail, plaintiffs allege that TPI – along with the SEC, FINRA, dozens of financial institutions and thousands of sophisticated investors – negligently disregarded "red flags" that purportedly signaled Madoff's scheme. In reality, TPI, like the plaintiffs, was a victim of Madoff's well-concealed fraud, and had no reason to believe anything was amiss until Madoff confessed to his misdeeds. Plaintiffs' conclusory allegations to the contrary are insufficient as a matter of law. Indeed, as shown below, plaintiffs' federal securities law claims are legally defective and should be dismissed for the following reasons, among others:

- Plaintiffs fail to state a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") because they allege no facts sufficient to show that any Tremont defendant made a false statement of material fact with the intent to deceive plaintiffs or that any plaintiff justifiably relied on any such statement;

- Plaintiffs' allegations under Section 20(a) of the Exchange Act are insufficient to state a claim of control person liability because plaintiffs have not adequately alleged any primary violation of Section 10(b) or facts sufficient to show that any Tremont defendant was a culpable participant in any primary violation.

Furthermore, as shown below and in the brief filed today in support of the Tremont

Defendants' motion to dismiss in In re Tremont State Law Litigation, 08 Civ. 11183 (TPG) (the

"State Law Action"), plaintiffs' pendent state law claims are legally insufficient because:

- They are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA");

- They also are barred by provisions in the Funds' limited partnership agreements that exculpate the Tremont Defendants from liability for decisions made in good faith, such as investing with Madoff;

- Plaintiffs lack standing to assert their state law claims other than negligent misrepresentation because those claims are derivative in nature and therefore can be maintained, if at all, only by the Funds;

- Plaintiffs' breach of fiduciary duty, negligent misrepresentation, gross mismanagement and unjust enrichment claims are preempted by the Martin Act; and

- Plaintiffs' allegations of violations of state law otherwise fail to state a claim for relief.

## SUMMARY OF ALLEGATIONS

### The Funds

The Funds are hedge funds organized under Delaware law as limited partnerships.[1]

Defendant TPI, a Connecticut corporation headquartered in Rye, New York, is the general partner

---

[1]     (Compl. ¶¶ 12-14, 21; Tremont Market Neutral Fund, L.P. Fourth Am. and Restated Ltd. P'ship Agreement ("Market Neutral LPA"), attached Transmittal Decl. of Jason C. Vigna in Supp. of the Tremont Defendants' Mot. To Dismiss ("Trans. Decl.") as Ex. A, at preamble.)

In deciding this motion, the Court may consider documents referred to in the Complaint or in plaintiffs' possession, documents filed with the SEC and facts of which judicial notice properly may be taken. See In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), aff'd sub nom. Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005).

of the Funds. (Compl. ¶ 19.) TPI manages the Funds pursuant to limited partnership agreements ("LPAs") that authorize TPI, among other things, to delegate management of the Funds' assets to a manager or managers chosen in its sole discretion.[2] Pursuant to that authority, TPI selected Madoff to manage the Broad Market, Prime and XL Funds' assets. (Id. ¶ 47.) TPI also selected Madoff as one of a number of managers who managed the assets of the Market Neutral Fund. (Id.)

Defendant TGH is a holding company organized under Delaware law. (Compl. ¶ 18.) It is headquartered in Rye, New York and is the parent corporation of TPI, among other companies. (Id.) RIM is an unincorporated division of TGH that helps manage "single manager" investment funds, including certain of the Funds at issue here. (Id. ¶ 17.) TCM is an unincorporated division of TGH that helps manage certain "multi-manager" investment funds, including the Market Neutral Fund. (Id. ¶ 20.)

Defendant Robert Schulman was the president of TGH from mid-1994 to June 2006. (Compl. ¶ 24.) Defendant Rupert Allan has been president of TGH since 2006. (Id. ¶ 25.) Defendant Jim Mitchell serves as the head of RIM. (Id. ¶ 26.)

**The Private Placement Memoranda**

The Funds sold limited partnership interests to qualified investors pursuant to private placement memoranda ("PPMs") that disclosed the material terms and risks of investments with the Funds. (Compl. ¶ 47.) The PPMs stated that, in selecting asset managers, TPI would be guided by the asset manager's past performance and reputation, size and efficiency of assets managed, continued favorable outlook for the strategy employed and ability of the Funds to make withdrawals

---

[2]    (Rye Select Broad Market Fund, L.P. Am. and Restated Ltd. P'ship Agreement ("Broad Market LPA"), attached to the Trans. Decl. as Ex. B, § 2.06(ix); Rye Select Broad Market Prime Fund, L.P. Am. and Restated Ltd. P'ship Agreement ("Prime Fund LPA"), attached to the Trans. Decl. as Ex. C, §§ 1.4(a), 2.2; Rye Select Broad Market XL Fund, LP Am. and Restated Ltd. P'ship Agreement ("XL Fund LPA"), attached to the Trans Decl. as Ex. D, §§ 1.4(b), 2.2; Market Neutral LPA (Trans. Decl. Ex. A), §§ 1.4, 2.1-2.2.)

or liquidate their investments. (Compl. ¶ 99.) The PPMs warned that "the amount of publicly available information that may be used by the General Partner in selecting the Managers may be relatively small."[3]

Although the PPMs did not identify Madoff by name, they disclosed that each Fund except the Market Neutral Fund was "presently a single advisor fund" that custodied its assets with a broker-dealer that had only one principal – the Fund's asset manager – and that the asset manager intended to invest "primarily in securities."[4] The Market Neutral PPM explained that "[r]ather than investing the assets of the Partnership directly in securities, the General Partner seeks to invest with Managers" who, in turn, intended to make "market neutral" investments.[5]

The PPMs warned that "the Partnership will not have direct control of the Partnership's assets once they are allocated among the Managers" and that "the overall success of the Partnership depends on the ability of [an asset manager] to be successful in its own strategy."[6] The PPMs further warned that:

---

[3]        (Rye Select Broad Market Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("Broad Market PPM"), attached to the Trans. Decl. as Ex. E, at 32; Rye Select Broad Market Prime Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("Prime Fund PPM"), attached to the Trans. Decl. as Ex. F, at 21; Rye Select Broad Market XL Fund, LP Am. and Restated Confidential Private Placement Mem. ("XL Fund PPM"), attached to the Trans. Decl. as Ex. G, at 19; Tremont Market Neutral Fund, L.P. Confidential Private Placement Mem. ("Market Neutral PPM"), attached to the Trans. Decl. as Ex. H, at 20.)

[4]        (Compl. ¶¶ 85-86; Broad Market PPM (Trans. Decl. Ex. E) at 1, 18; Prime Fund PPM (Trans. Decl. Ex. F) at ii, 1-2, 12; XL Fund PPM (Trans. Decl. Ex. G) at 3, 7.)

        The account statements sent to the Rye investors confirmed what the investment community knew: Madoff was that advisor / custodian. (See, e.g., July 2007 Arthur M. Brainson IRA R/O account statement, attached to the Trans. Decl. as Ex. I (stating, "the portfolio's investments . . . have been and will continue to be custodied for the benefit of the portfolio at Bernard L. Madoff Investment Securities LLC ["BLMIS"], 885 Third Avenue, New York, NY 10022").)

[5]        (Market Neutral PPM (Trans. Decl. Ex. H) at 3, 7.)

[6]        (Compl. ¶ 85; Broad Market PPM (Trans. Decl. Ex. E) at 2, 32; Prime Fund PPM (Trans. Decl. Ex. F) at x, 2, 27, 28, 36; XL Fund PPM (Trans. Decl. Ex. G) at 25; Market Neutral PPM (Trans. Decl. Ex. H.) at iii, 2, 3, 19.)

The Partnership will receive periodic reports from Managers at the same time as any other investor with such Manager. The General Partner will request detailed information on a continuing basis from each Manager regarding the Manager's historical performance and investment strategies. *However, the General Partner may not always be provided with detailed information regarding all the investments made by the Managers because certain of this information may be considered proprietary information by the Managers.* This lack of access to information may make it more difficult for the General Partner to select, allocate among and evaluate the Managers.[7]

Because of the significant risks associated with the Funds, investors were required to meet stringent standards of sophistication in order to qualify as limited partners.[8] The PPMs warned that the Funds would be a suitable investment:

[o]nly for sophisticated investors for whom an investment in the Partnership does not constitute a complete investment program and who fully understand, and are willing to assume, and who have the financial resources necessary to withstand the risks involved in the Partnership's specialized investment program and to bear the potential loss of their entire investment in the Interests.[9]

### The Management Fee and the Exculpation Clauses

Pursuant to the LPAs, the Funds have agreed to pay TPI specific monthly management and administrative fees for the services it renders to the Funds.[10] The LPAs also include broad exculpation clauses. The XL Fund, Prime Fund and Market Neutral Fund LPAs provide in that regard (with minor variations in wording) as follows:

---

[7]    (Broad Market PPM (Trans. Decl. Ex. E) at 33 (emphasis added); Prime Fund PPM (Trans. Decl. Ex. F) at 28; XL Fund PPM (Trans. Decl. Ex. G) at 19; Market Neutral PPM (Trans. Decl. Ex. H) at 20.)

[8]    For example, before they could be permitted to invest in any of the Funds, individuals and institutions needed to establish that they were "accredited investors" within the meaning of Regulation D promulgated under Section 4(2) of the Securities Act of 1933 and "qualified purchasers" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended. (Broad Market PPM (Trans. Decl. Ex. E) at 3-4, 25-30; Prime Fund PPM (Trans. Decl. Ex. F) at 21-27; XL Fund PPM (Trans. Decl. Ex. G) at 10-15); Market Neutral PPM (Trans. Decl. Ex. H) at 11-16.)

[9]    (Broad Market PPM (Trans. Decl. Ex. E) at 25; Prime Fund PPM (Trans. Decl. Ex. F) at 21-22; XL Fund PPM (Trans. Decl. Ex. G) at 10; Market Neutral PPM (Trans. Decl. Ex. H) at 11.)

[10]    (Compl. ¶¶ 54, 76; Broad Market LPA (Trans. Decl. Ex. B) § 3.13; Prime Fund LPA (Trans. Decl. Ex. C) § 2.3; XL Fund LPA (Trans. Decl. Ex. D) § 2.3; Market Neutral LPA (Trans. Decl. Ex. A) § 2.3.)

Neither the General Partner nor any Affiliate shall be liable to any Limited Partner or the Partnership for errors of judgment or for action or inaction, whether or not disclosed, which said party reasonably believed to be in the best interests of the Partnership[.[11]]

The Broad Market Fund LPA similarly provides:

The General Partner shall not be liable, responsible or accountable in damages or otherwise to any Limited Partners or the Partnership for any act of omission of such General Partner, except for acts or omissions constituting willful misfeasance, bad faith, gross negligence or a reckless disregard of duty.[[12]]

### Plaintiffs' Investments in the Funds

Arthur M. Brainson IRA R/O ("Brainson") became a limited partner in the Broad Market Fund in November 1998.[13] Yvette Finkelstein became a limited partner in the Prime Fund in May 2003.[14] Group Defined Pension Plan & Trust ("Group Defined") became a limited partner in the Market Neutral Fund in January 2003.[15] No plaintiff claims to have invested in the XL Fund.

Plaintiffs signed subscription agreements with the Fund in connection with their purchases of Fund shares. Plaintiffs represented in these agreements that they are sophisticated investors who understand the risks of investing in the Funds, they obtained their own investment counsel before purchasing Fund shares and they have the financial wherewithal to afford to lose the entire amount of their investment in the Funds.[16]

---

[11]     (XL Fund LPA (Trans. Decl. Ex. D) § 2.6; Prime Fund LPA (Trans. Decl. Ex. C) § 2.7; Market Neutral LPA (Trans. Decl. Ex. A) § 2.7.)

[12]     (Broad Market LPA (Trans. Decl. Ex. B) § 3.09.)

[13]     (Compl. ¶ 8; Arthur M. Brainson IRA Rollover Subscription Agreement ("Brainson Agreement"), attached to the Trans. Decl. as Ex. J.)

[14]     (Compl. ¶ 9; Yvette Lehrer Finkelstein Subscription Agreement ("Finkelstein Agreement"), attached to the Trans. Decl. as Ex. K.)

[15]     (Compl. ¶ 10; Group Defined Pension Plan & Trust MPP Subscription Agreement ("Group Defined Agreement"), attached to the Trans. Decl. as Ex. L.)

[16]     (Brainson Agreement (Trans. Decl. Ex. J) at S-30-33; Finkelstein Agreement (Trans. Decl. Ex. K), at S-30-35; Group Defined Agreement (Trans. Decl. Ex. L) at S-8-11.)

Madoff's fraud came to light on December 11, 2008. On that date, the world first learned that Madoff had not invested his clients' assets, as previously represented, in S&P 500 stocks or S&P 100 put and call options. Rather, Madoff confessed to orchestrating a longstanding and far-reaching Ponzi scheme, admitting for the first time that he secretly stole and dissipated the assets entrusted to him by numerous hedge funds and other investors, including the Funds. (Compl. ¶¶ 1, 43-51.)

Plaintiffs acknowledge that Madoff built a broad infrastructure to create the appearance that he was operating a legitimate investment advisory business. (Compl. ¶¶ 44-45.) Among other things, Madoff created false trading confirmation and client account statements that appeared to confirm that he was executing his trading strategy. (Id. ¶ 44.) He also delivered to his clients and the Securities and Exchange Commission ("SEC") annual audited financial statements. (Id.)

Plaintiffs conclusorily assert that TPI's failure to detect Madoff's fraud prior to December 11 demonstrates that it must not have conducted due diligence of Madoff or monitored the Funds' investments. (Compl. ¶ 61.) Nonetheless, plaintiffs concede, as they must, that the SEC also failed to uncover Madoff's fraud even though it conducted its own investigation after being advised of twenty-nine "red flags" purportedly indicating that Madoff was operating a Ponzi scheme.[17]

Based on the false premise that any due diligence would have revealed Madoff's Ponzi scheme, plaintiffs assert claims against the Tremont Defendants for: (i) violations of Section 10(b) of the Exchange Act (Compl. ¶¶ 197-202); (ii) violations of Section 20(a) of the Exchange Act (against Schulman, Allan and Mitchell only) (id. ¶¶ 203-206); (iii) common law fraud (id. ¶¶ 207-15); (iv) negligent misrepresentation (id. ¶¶ 216-20); (v) breach of fiduciary duty (id. ¶¶ 221-25);

---

[17]     (Compl. ¶ 65; SEC Division of Enforcement Case Closing Recommendation in Case No. NY-07563 ("Case Closing Recommendation"), attached to the Trans. Decl. as Ex. M.)

(vi) gross negligence and mismanagement (id. ¶¶ 226-32); and (vii) unjust enrichment (id. ¶¶ 233-35).

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO STATE A CLAIM
       UNDER SECTION 10(b) OF THE EXCHANGE ACT**

To state a claim under Section 10(b) of the Exchange Act, plaintiffs must allege facts sufficient to show that:  (i) in connection with the purchase or sale of securities, (ii) the defendant, acting with scienter, (iii) made a false material representation or omitted to disclose material information (iv) and that plaintiff's reliance on defendant's action (v) caused plaintiff injury.  See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2008).  Under both Rule 9(b) of the Federal Rules of Civil Procedure and Section 101(b) of the PSLRA, such allegations must be made "'with particularity'" and give "'rise to a strong inference that the defendant acted with the required state of mind'" – here, "'to deceive, manipulate, or defraud.'"  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313-14 (2007) (citation omitted).  As shown below, the Complaint fails adequately to allege any of these essential elements of a Section 10(b) claim.[18]

**A.    Plaintiffs Have Not Adequately Pled A Material Misrepresentation**

Plaintiffs claim that TPI alone[19] made three types of allegedly false representations:  (i) the Funds' "investment strategies and objectives" were to invest in securities via an asset manager who

---

[18]    Plaintiffs' misrepresentation claims and other claims related to the XL Fund should be dismissed for the additional reason that plaintiffs have never invested in the XL Fund and, therefore, lack standing to assert those claims.  See, e.g., Stegall v. Ladner, 394 F. Supp. 2d 358, 362-63 (D. Mass. 2005) (mutual fund investor lacked standing to assert claims involving other funds sharing a common investment adviser).

[19]    Plaintiffs do not attribute misstatements to any of the other Tremont Defendants.  Accordingly, the Section 10(b) claims against them should be dismissed.  See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) (a defendant may only be held liable under § 10(b) for statements publicly attributed to it).

employed a "split-strike conversion strategy" (Compl. ¶¶ 2, 49, 57-58, 90-96), (ii) TPI "had conducted, and continued to conduct, a thorough investigation of Madoff" (id. ¶ 103); and (iii) the Funds were performing as expected (id. ¶¶ 105-09).[20]

Regarding the first "misrepresentation," plaintiffs do not and cannot allege, as they must, that TPI believed, at the time it made the purported misrepresentation, that its investment objective would be (or was) to invest with an asset manager who did *not* employ a split-strike strategy.  See, e.g., ATSI Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105-06 (2d Cir. 2007) (representations regarding intentions are not actionable unless the allegations permit a fair inference that the represented intent was not honestly held when made).  Mere failure to achieve a stated objective is not fraud.  See, e.g., Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1129 (2d Cir. 1994).  This is especially so here, where the PPMs specifically disclosed that "**there is no assurance that the Partnership will be able to achieve its investment objective or be profitable**."[21]  See, e.g., Halperin v. eBankerUSA.com, Inc., 295 F.3d 352, 360 (2d Cir. 2002) ("cautionary language

---

[20]     Plaintiffs also conclusorily allege that the Tremont Defendants falsely claimed to have conducted due diligence on Madoff before investing with him.  (Compl. ¶¶ 52, 53, 56-58, 103.)  Plaintiffs, however, have not attempted to quote any such representation or identify when or where it supposedly was made. Moreover, plaintiffs' suggestion that TPI did not conduct due diligence on Madoff is unsupported by any allegation of fact (and is without basis in fact).  This conclusory, hypothetical assertion (id. ¶ 74 ("they did not conduct due diligence, or if conducted a meaningful one . . .") is legally insufficient, particularly in light of the heightened pleading requirements of Rule 9(b) and the PSLRA.  See, e.g., Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 542 (S.D.N.Y. 2007) ("Henneberry provides absolutely no support for his wholly conclusory allegations that those statements were 'incorrect or should have been known by them to be incorrect.'  Henneberry does not, for example, allege that he learned from a SCOA employee or through other channels that third-party investors had never been contacted by SCOA.") (citation omitted).

         In paragraphs 84 and 87 of the Complaint, plaintiffs also appear to suggest that TPI "concealed" Madoff's role as asset manager.  Plaintiffs, however, admit that the Tremont Defendants marketed their funds "as a gateway to Madoff's investment advisory services[.]"  (Compl. ¶ 47.)  Further, the account statements sent to the plaintiffs clearly stated that the Funds' assets were "custodied for the benefit of the [Fund] at Bernard L. Madoff Investment Securities LLC[.]"  (Trans. Decl. Ex. I.)  If plaintiffs in fact initially made investments in the Funds without knowing the identity of the Funds' asset manager, they indisputably remained investors after learning his identity, demonstrating that the alleged omission was immaterial.

[21]     (Broad Market PPM (Trans. Decl. Ex. E) at 3 (emphasis in original); Prime Fund PPM (Trans Decl. Ex. F), at vii; XL Fund PPM (Trans. Decl. Ex. G) at 18; Market Neutral PPM (Trans. Decl. Ex. H) at 19.)

addresses the relevant risk directly, and therefore neither offering memorandum was misleading"), aff'd, 40 F. App'x 624 (2d Cir. 2002).

For substantially the same reasons, TPI's alleged representations regarding ongoing monitoring activities provide no basis for a Section 10(b) claim. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise . . . does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."). Further, plaintiffs have not pled any specific facts showing that TPI's "monitoring" representations were untrue. See, e.g., Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) ("To succeed on this claim, plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."). TPI did not, and could not, guarantee that its oversight procedures would detect all potential frauds. See ECA & Local 134 IBEW Joint Pension Trust, 553 F.3d at 206 (statements about strength of company's risk management procedures were mere "puffery" that provided no basis for securities law claim). To the contrary, TPI repeatedly warned plaintiffs that it would not have access to complete information regarding Madoff's trading and that plaintiffs could lose their entire investment. (See discussion, supra, pp. 3-6.) No fraud claim may be premised on such statements. See, e.g., Halperin, 295 F.3d at 360 (cautionary language precludes potential fraud claim).

To the extent plaintiffs are alleging that TPI made false representations regarding *past* efforts to monitor Madoff, plaintiffs have not alleged, as they must, facts sufficient to show that TPI did not undertake the monitoring activities at issue. The PSLRA requires that the Complaint "specify each statement alleged to have been misleading . . . and, if an allegation regarding the statement or omission is made on information and belief, the complaint *shall state with particularity all* facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added). The boilerplate allegations in the Complaint regarding the sources of plaintiffs' information and belief

(Compl., preamble at 1) fall far short of what is required.  See In re Optionable Sec. Litig., 577 F. Supp. 2d 681, 689, 691 (S.D.N.Y. 2008) (complaint must include "factual allegations . . . based on adequate sources [that] justify plaintiffs' conclusion that defendants' statements were materially misleading").  Plaintiffs do not, for example, allege that they learned from a Tremont employee after the fact that no diligence had occurred.  See Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 542 (S.D.N.Y. 2007).  Plaintiffs' "conclusory assertion that [defendants'] statement was false is not sufficient."  In re Optionable, 577 F. Supp. 2d at 693.  Moreover, the conclusory allegation of falsity is at odds with allegations elsewhere in the Complaint, which indicate that TPI *did* monitor Madoff's reported trading activity by, among other things, reviewing Madoff's trade confirmations and investment advisor reports (Compl. ¶ 44) and conducting annual audits (Compl. ¶¶ 37-38).  Accordingly, there is no factual basis for plaintiffs' bald allegation that TPI engaged in no monitoring whatsoever, warranting dismissal of this claim.

With the vantage of hindsight, however, it is now apparent that the Funds' performance updates and plaintiffs' account statements were inaccurate as a result of Madoff's well-concealed fraud.  Nonetheless, plaintiffs have not pled any facts demonstrating that any Tremont defendant knew that the statements were false when disseminated, or otherwise intended to mislead plaintiffs.

### B.    Plaintiffs Have Not Adequately Pled Scienter

To adequately plead scienter, a plaintiff must allege facts showing "both motive and opportunity to commit fraud, or . . . constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness."  Shields, 25 F.3d at 1128.  Moreover, "'an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  Medis Investor Group v. Medi Tech., Ltd., 586 F. Supp. 2d 136, 141 (S.D.N.Y. 2008) (quoting Tellabs, 551 U.S. at 314).  Otherwise, the claim must be dismissed.  See id.

Plaintiffs have not established the requisite "motive" because they have not pled, as they must, that any of the Tremont Defendants "benefitted in some concrete and personal way from the purported fraud." Novak v. Kasaks, 216 F.3d 300, 307 (2d Cir. 2000). Plaintiffs' only suggestion of motive is TPI's purported interest in attracting additional Fund investors in order to earn the fees paid by *all* funds managed by TPI, regardless of whether they invested with Madoff. (See Compl. ¶¶ 48, 54, 74-77, 199.) It is well established, however, that this type of general financial motive is insufficient as a matter of law to plead scienter. See Kalnit v. Eichler, 264 F.3d 134, 140 (2d Cir. 2001) ("'a generalized motive, one which could be imputed to any . . . for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter'") (citation omitted); Shields, 25 F.3d at 1130.

Moreover, it would have been illogical for the Tremont Defendants knowingly to participate in Madoff's Ponzi scheme. As "whistleblower" Harry Markopolos allegedly advised the SEC in 2005, "[a]ll Ponzi schemes eventually topple of their own weight[.]" (Compl. ¶ 65; Trans. Decl. Ex. N.) Nothing in the pleadings remotely suggests a reason why TPI or any other Tremont defendant would knowingly participate in the inevitable destruction of their Funds, reputations and livelihood. See Shields, 25 F.3d at 1130 ("It is hard to see what benefits accrue from a short respite from an inevitable day of reckoning."); In re PXRE Group, Ltd. Sec. Litig., 600 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) ("'When evaluating motive and opportunity allegations, the Second Circuit authorizes inquiry, even at the motion to dismiss stage, as to whether plaintiffs allege a putative scheme that has any chance of achieving its putative ends.'") (citation omitted).

Plaintiffs also have not adequately alleged any conscious misbehavior. To do so, plaintiffs must "'at the least'" show that the defendant engaged in "reckless conduct . . . 'which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" Kalnit, 264 F.3d at 142 (citation omitted). Allegations that a defendant failed to

investigate supposed "red flags" are not enough.[22] See, e.g., Hart v. Internet Wire, Inc., 50 F. App'x 464, 466 (2d Cir. 2002). Instead, plaintiffs must show not only that clear truth-revealing facts existed, but also that those facts were brought directly to each defendant's attention[23] – something plaintiffs do not and cannot allege here. See, e.g., In re PXRE, 600 F. Supp. 2d at 539 ("it does not follow that . . . generalized awareness of . . . 'concerns'" renders a decision to go forward in the face of such concerns legally reckless).

The absence of scienter is underscored by the SEC's knowledge of the same "red flags" plaintiffs attempt to rely on here to create an inference of fraudulent intent. (See Compl. ¶ 65.) According to plaintiffs, those flags were disclosed to the SEC in 2005 by the forensic accountant Harry Markopolos. (Id. ¶ 65.) Despite investigating those "red flags," the SEC did not uncover Madoff's fraud.[24] As Judge McMahon recently held in substantially similar circumstances when dismissing a securities fraud complaint against a hedge fund manager that allegedly overlooked red flags of a Ponzi scheme:

> I . . . find the inference of recklessness alleged by plaintiff – that the [defendant's] failure to uncover the fraud evidences a reckless lack of due diligence – to be less compelling than an opposing inference – that [defendant's] failure to discover the fraud merely places it alongside the SEC, the IRS, and every other interested party that reviewed [the asset manager's] finances.

In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 417-18 (S.D.N.Y. 2007); see also In re PXRE, 600 F. Supp. 2d at 547 (while plaintiffs "might suggest that '[d]efendants should have been more

---

[22]     As Judge McMahon recently ruled when dismissing substantially identical allegations against a hedge fund manager accused of securities fraud, "[t]he failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger' or participating in the fraud." In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 417 (S.D.N.Y. 2007); see also In re PXRE, 600 F. Supp. 2d at 549 ("'[e]ven an 'egregious' failure to gather information will not establish 10b-5 liability'") (citation omitted).

[23]     Scienter and the other elements of a Section 10(b) claim must be pled against each defendant separately. See, e.g., Rich v. Maidstone Fin., Inc., No. 98 Civ. 2569, 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001).

[24]     (Case Closing Recommendation (Trans. Decl. Ex. M).)

alert and more skeptical, . . . nothing alleged indicates that management was promoting a fraud'") (citation omitted).

Here, too, the more compelling inference is that Madoff's fraud was sufficiently hidden that it was not "reckless" to fail to uncover it. See Tellabs, 551 U.S. at 314 ("an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

C.      **Plaintiffs Have Not Adequately Pled Justifiable Reliance**

Despite their obligation under Rule 9(b) and the PSLRA to plead specific facts establishing justifiable reliance, plaintiffs make only the conclusory assertion that plaintiffs "relied, to their detriment, on [the alleged] misleading statements and omissions in purchasing limited partnerships in the Funds." (Compl. ¶ 201; see also id. ¶¶ 195-96.) This bald allegation is facially insufficient to support a fraud claim. See, e.g., First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the U.S., 164 F. Supp. 2d 383, 394 (S.D.N.Y. 2001), aff'd, 43 F. App'x 462 (2d Cir. 2002).

In any event, plaintiffs cannot demonstrate that any alleged reliance was "justifiable." The PPM for each Fund expressly cautions against reliance – in bold letters – on the cover of the document:

**NEITHER THE DELIVERY OF THIS MEMORANDUM NOR ANY SALE MADE UNDER IT SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT INFORMATION CONTAINED IN THIS MEMORANDUM IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THE CONTENTS OF THIS MEMORANDUM SHOULD NOT BE CONSTRUED AS INVESTMENT, LEGAL OR TAX ADVICE. A NUMBER OF FACTORS MATERIAL TO A DECISION WHETHER TO INVEST IN THE INTERESTS HAVE BEEN PRESENTED IN THIS MEMORANDUM IN SUMMARY OR OUTLINE FORM ONLY IN RELIANCE ON THE FINANCIAL SOPHISTICATION OF THE OFFEREES. EACH PROSPECTIVE INVESTOR IS URGED TO SEEK INDEPENDENT INVESTMENT, LEGAL AND TAX ADVICE**

**CONCERNING THE CONSEQUENCES OF INVESTING IN THIS PARTNERSHIP.**[25]

Such express disclaimers render plaintiffs' alleged reliance unjustifiable as a matter of law.  See, e.g., Steed Fin. LDC v. Nomura Sec. Int'l, Inc., No. 00 Civ. 8058, 2004 WL 2072536, at *8 (S.D.N.Y. Sept. 14, 2004) ("The PPM by which the Private Certificates were sold clearly advised potential investors that they could not rely on the PPM and exhibits thereto as a substitute for their own due diligence."), aff'd, 148 F. App'x 66 (2d Cir. 2005).

### D.     Plaintiffs' Securities Fraud Claims Are Barred By The "Santa Fe" Doctrine

The gravamen of the Complaint is mismanagement, not fraud.  At bottom, plaintiffs are complaining about TPI's purported failure to (i) accomplish the investment strategies and objectives of the Funds and (ii) perform the oversight, management research or due diligence allegedly represented in the Funds' offering materials.  (E.g., Compl. ¶ 2.)  These are, at most, allegations of dereliction of duty.  Consequently, they are the province of state fiduciary duty law, not federal securities fraud.  See In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 376 (S.D.N.Y. 2004).[26] As the Supreme Court has held, "'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'"  Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 479 (1977) (citation omitted); see also Waxman v. Envipco Pick Up & Processing Servs., Inc., No. 02 Civ. 10132, 2003 WL 22439796, at *9-10 (S.D.N.Y. Oct. 28, 2003).  Accordingly, plaintiffs cannot state a Section 10(b) claim merely by alleging, as they effectively do here, that "the failure to disclose [a] breach of fiduciary duty is a [material] misrepresentation."  Biesenbach v.

---

[25]     (Broad Market PPM (Trans. Decl. Ex. E) at cover leaf 3; Prime Fund PPM (Trans. Decl. Ex. F.) at cover leaf 3; XL Fund PPM (Trans. Decl. Ex. G) at iii; Market Neutral PPM (Trans. Decl. Ex. H) at cover leaf 3.)

[26]     Allegations that require a court "to distinguish between conduct that is reasonable and unreasonable, or informed and uninformed" may not be resolved in a securities law action.  In re Citigroup, 330 F. Supp. 2d at 376.

<u>Guenther</u>, 588 F.2d 400, 402 (3d Cir. 1978).  For this additional reason, plaintiffs' federal securities law claims should be dismissed.

### E.    Plaintiffs' Securities Fraud Claims Related To The Market Neutral Fund Are Time-Barred

Plaintiffs nowhere allege that any plaintiff purchased a limited partnership interest in the Market Neutral Fund during the proposed Class Period (<u>compare</u> Compl. ¶ 8 <u>with</u> <u>id.</u> ¶ 10), and none did.  Group Defined made its one and only investment in the Market Neutral Fund in January 2003.[27]  As that is more than five years before plaintiffs filed suit, their Exchange Act claims related to the Market Neutral Fund are barred by the Act's statute of repose.  <u>See</u> 28 U.S.C. § 1658(b) (a plaintiff must file an Exchange Act claim within the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation"); <u>Lampf, Pleva, Lipkind, Propis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 363 (1991) (limitation is a statute of repose).

## II.    PLAINTIFFS FAIL TO STATE A "CONTROL PERSON" CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT

To state a claim for "control person" liability under Section 20(a) of the Exchange Act, plaintiffs must allege facts sufficient to show (i) a primary violation of the federal securities laws, (ii) defendant's control of the primary violator and (iii) defendant's culpable participation in the controlled person's fraud.  <u>See</u> <u>ATSI Commc'ns</u>, 493 F.3d at 108; <u>In re Corning, Inc. Sec. Litig.</u>, 349 F. Supp. 2d 698, 722 (S.D.N.Y. 2004) (Griesa, J.).

As a threshold matter, as demonstrated above, plaintiffs have failed to plead a primary violation of Section 10(b) by any Tremont-related entity.  Absent a primary violation of the Exchange Act, there is and can be no secondary liability under Section 20(a).  Plaintiffs' Section 20(a) claim is defective for this reason alone.  <u>See, e.g.</u>, <u>ATSI Commc'ns</u>, 493 F.3d at 108.

---

[27]    (<u>See</u> Group Defined Agreement (Trans. Decl. Ex. L).)

Further, plaintiffs have failed to allege sufficient facts to show that any of the purported "control persons" (Schulman, Allan or Mitchell) "was in some meaningful sense a culpable participant in the fraud [allegedly] perpetrated by the controlled entity."[28] Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998).[29] To do so with the particularity required by the PSLRA, plaintiffs must show "'that the defendant acted at least with recklessness, in the sense required by Section 10(b) of the Exchange Act and Rule 10b-5.'" Kalin v. Xanboo, Inc., No. 04 Civ. 5931, 2009 WL 928279, at *12 (S.D.N.Y. Mar. 30, 2009) (citation omitted). As shown above, generalized "concerns" are insufficient to demonstrate scienter in the absence of allegations that specific truth-revealing facts were known by a specified defendant. See, e.g., In re PXRE Group, 600 F. Supp. 2d at 537. Having failed to make any specific allegations regarding Schulman, Allan or Mitchell, the Section 20(a) claims against them should be dismissed. See, e.g., Rich v. Maidstone Fin., Inc., No. 98 Civ. 2569, 2001 WL 286757, at *11 (S.D.N.Y. Mar. 23, 2001) ("where a complaint contains no detailed allegations regarding the state of mind of the 'control person,' a Section 20(a) claim must be dismissed").

## III. PLAINTIFFS' CLAIMS ARE BARRED BY SLUSA

Plaintiffs' state law claims are barred by SLUSA and should be dismissed for the reasons set forth in Section III of the brief filed today by the Tremont Defendants in the State Law Action (the

---

[28] Plaintiffs also have failed to allege any facts demonstrating that Mr. Allan had control over any of the alleged misrepresentations at issue. See, e.g., In re Sotheby's Holdings, Inc., No. 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) (noting that defendant must not only have abstract "control" over some aspect of the primary violator's operations, but also "[a]ctual control over . . . the transaction in question" and that officer or director status alone is insufficient to establish control).

[29] While a few courts in this District require plaintiffs to plead only a primary violation and control of the primary violator to state a claim under Section 20(a), see, e.g., Kalin v. Xanboo, Inc., No. 04 Civ. 5931, 2009 WL 928279, at *12 n.5 (S.D.N.Y. Mar. 30, 2009) (noting intra-District split), this Court appears to follow the majority rule set forth in Boguslavsky v. Kaplan, 159 F.3d at 720, that a plaintiff must in addition allege sufficient facts to show that "the controlling entity was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled entity." In re Corning, 349 F. Supp. 2d at 722.

"State Law Brief"), which is incorporated herein by reference. SLUSA precludes plaintiffs' state law claims because plaintiffs (i) seek to represent a covered class, 15 U.S.C. § 78bb(f)(5)(B), of more than fifty people and/or consisting of themselves and unnamed parties similarly situated (Compl. ¶¶ 41-42); (ii) assert state law claims (id. ¶¶ 42, 197-254); (iii) assert that defendants deceived them and made material misstatements (id. ¶¶ 42, 83-115); and (iv) assert that defendants did so in connection with the misrepresented purchase of "30 to 40 large capitalization S&P 500 stocks" and "S&P 100" put and call options (id. ¶¶ 43-44, 49), which are "covered security[ies]," 15 U.S.C. § 78bb(f)(5)(E). See Schnorr v. Schubert, No. CIV 05-303, 2005 WL 2019878, at *5-6 (W.D. Okla. Aug. 18, 2005) (finding claims that defendants failed to prevent Ponzi scheme barred by SLUSA).

## IV. PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY THE PARTNERSHIP AGREEMENTS' EXCULPATION PROVISIONS

The state law claims against the Tremont Defendants should be dismissed for the additional reason that they are barred by the exculpation provisions of the Funds' limited partnership agreements. As demonstrated in Section I of the State Law Brief, which is incorporated herein by reference, these provisions preclude liability for any acts other than those *consciously taken in bad faith*. See In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 65-66 (Del. 2006) (finding nearly identical language to eliminate potential liability for acts other than "a violation of the duty to act in good faith"). Even the least stringent standard of liability created under the LPAs – gross negligence (set forth only in the Broad Market Fund LPA) – is itself "extremely stringent." In re Lear Corp. S'holder Litig., 967 A.3d 640, 652 (Del. Ch. 2008). Under Delaware law, "'gross negligence means reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason.'" Id. at 652, n.45 (citation omitted).

Plaintiffs' allegations are insufficient to plead gross negligence, much less legal bad faith.[30] Plaintiffs claim that TPI[31] should have "discovered at least some of the dozens of red flags identified herein" and that, if it had, it may have "avoided investing with Madoff," as did certain (but not all) other "investment professionals." (Compl. ¶ 110.) This is simply an allegation that TPI failed to do all that it should have under the circumstances. As the Delaware Supreme Court recently held, however, this pleads nothing more than an exculpated violation of the duty of care. See Lyondell Chemical Company v. Ryan, -- A.2d --, 2009 WL 1024764, at *7 (Del. Mar. 25, 2009).[32] As the Bayou Hedge Fund court held in dismissing similar claims against a hedge fund manager that allegedly overlooked red flags of a Ponzi scheme, an alleged "failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger.'" In re Bayou Hedge Fund Litig., 534 F. Supp. 2d at 417; accord In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 128 (Del. Ch. 2009) ("The warning signs alleged by plaintiffs are not evidence that the directors consciously disregarded their duties[.]").

---

[30] Simply invoking the terms "gross negligence" (Compl. ¶¶ 73, 223, 226-32) and "bad faith" (Compl. ¶¶ 223-24, 228) are insufficient as a matter of law to avoid application of an exculpation provision. See Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005) ("If a party needs only to add gross negligence as a theory of liability to force litigation through discovery and a trial, contracting parties would be stripped of the substantial benefit of their bargain, that is, avoiding the expense of lengthy litigation."), aff'd in part, remanded in part on other grounds, 493 F.3d 283 (2d Cir. 2007); see also Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888, at *11-12 (S.D.N.Y. Dec. 22, 2003), aff'd 110 F. App'x 191 (2d Cir. 2004); Wood v. Baum, 953 A.2d 136, 141-42 (Del. 2008).

[31] While plaintiffs' make this assertion against all "Tremont Defendants," such "lumping" cannot be used to impose liability on parties such as TGH, TCM, Schulman, Allan and Mitchell as to whom few, if any, specific allegations are made in the Complaint. See, e.g., Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001).

[32] These allegations plainly are insufficient to establish bad faith. See In re Walt Disney, 906 A.2d at 63 & n.96 ("making material decisions without adequate information and without adequate deliberation, without more, [does not] constitute[] bad faith"); In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 128 (Del. Ch. 2009) ("The warning signs alleged by plaintiffs are not evidence that the directors consciously disregarded their duties or otherwise acted in bad faith[.]").

## V.   PLAINTIFFS LACK STANDING TO ASSERT
##      STATE LAW CLAIMS BELONGING TO THE FUNDS

As demonstrated in Section IV of the State Law Brief, plaintiffs' state law claims other than

negligence misrepresentation (which is a traditionally "direct" claim) also should be dismissed

because they are based on allegations of injury to the Funds and their partners as a group and

therefore are derivative in nature.  They may be pursued, if at all, solely by or on behalf of the

Funds – and *not* by plaintiffs on their own behalf, as they seek to do here.  Because plaintiffs have

not even attempted to satisfy the derivative standing requirements of Rule 23.1 and Delaware law

(including the requirement of making a pre-suit demand on TPI, the general partner), their claims

should be dismissed.  See, e.g., Aboushanab v. Janey, No. 06 Civ. 13472, 2007 WL 2789511, at *6

(S.D.N.Y. Sept. 26, 2007) ("Because Plaintiffs have failed to allege their claims . . . derivatively, in

the name of the corporation, Count Two of the complaint is dismissed against all defendants.").

## VI.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION, BREACH
##       OF FIDUCIARY DUTY, GROSS MISMANAGEMENT AND
##       UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE MARTIN ACT

As demonstrated in Section II of the State Law Brief, plaintiffs' negligent misrepresentation,

breach of fiduciary duty, gross mismanagement and unjust enrichment claims against the Tremont

Defendants also are barred by the Martin Act, N.Y. Gen. Bus. Law §§ 352, *et seq.* (McKinney

2009).  The allegations of the Complaint fall squarely within the Martin Act's preemptive scope

because they assert (i) deceitful practices (Compl. ¶¶ 83-115); (ii) in connection with investment

advice or the purchase or sale of investment products (id.); (iii) within or from the State of New

York (id. ¶¶ 6, 18-20, 24).  See Sedona Corp. v. Ladenburg Thalmann & Co., No. 03Civ.3120, 2005

WL 1902780, at *21-22 (S.D.N.Y. Aug. 9, 2005) (identifying elements of Martin Act-preempted

claims).  The claims based on these allegations therefore are preempted and should be dismissed.

**VII.  PLAINTIFFS' STATE LAW CLAIMS
    ARE OTHERWISE LEGALLY DEFICIENT**

 **A.    Plaintiffs' Fraud Claim Fails Adequately To Allege A
        Material Misstatement, Fraudulent Intent Or Justifiable Reliance**

To state a claim for fraud under New York law,[33] plaintiffs must allege, with particularity,

facts establishing:  "'(1) the defendant made a material false representation, (2) the defendant

intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation,

and (4) the plaintiff suffered damage as a result of such reliance.'"  Bridgestone/Firestone, Inc. v.

Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (citation omitted).  Because the elements

of a common law fraud under New York law are substantially identical to those under Section 10(b)

of the Exchange Act, the same defects that permeate plaintiffs' Section 10(b) claim warrant

dismissal of their claim of common law fraud.  See Gordon Partners v. Blumenthal, 293 F. App'x

815, 818 (2d Cir. 2008) (dismissing common law fraud claim on same grounds as § 10(b) claim);

Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) ("Because these [New York common

law fraud] elements are substantially identical to those governing § 10(b), the identical analysis

applies[.]").

 **B.    Plaintiffs' Negligent Misrepresentation Claim Is Indisputably
        Barred By The Partnership Agreements' Exculpation Provisions**

Because plaintiffs' negligent misrepresentation claim is grounded in simple negligence, it is

indisputably barred by the exculpation provisions of the LPAs.[34]  (See discussion, Section IV,

---

[33]    "Because, for conduct-regulating torts, the site of the tort is the controlling factor in the choice of law analysis, the District Court [should] appl[y] New York law to [Plaintiffs'] tort claims."  GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 385 (2d Cir. 2006) (citation omitted).  "With respect to the claims involving breaches of fiduciary duties, 'the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its . . . partners.'"  Trump v. Cheng, 862 N.Y.S.2d 812 (Table), 2005 WL 2738344, at *4 (Sup. Ct. N.Y. County Sept. 14, 2005) (quoting N.Y. P'ship Law § 121-901).

[34]    Further, the claim is barred for the same reasons as plaintiffs' fraud claim:  failure adequately to allege a material misrepresentation or reliance.  See Murray v. Xerox Corp., 811 F.2d 118, 123-24 (2d Cir.

*(cont'd)*

supra.)

### C.    Plaintiffs State No Claim Of Breach Of Fiduciary Duty

Plaintiffs claim that the Tremont Defendants breached their fiduciary duties by (i) failing to perform adequate due diligence and (ii) failing adequately to monitor Madoff's trading strategy. (Compl. ¶¶ 2, 221-25.)  Like the plaintiffs in the State Law Action, plaintiffs here cannot demonstrate that TPI – much less any other Tremont Defendant – had a duty to conduct due diligence or that TPI demonstrated the kind of conscious disregard of duty necessary to establish a "failure to monitor" claim, particularly in light of the broad exculpation provisions in place at each of the Funds.  For the reasons set forth in Section V(B) of the State Law Brief, plaintiffs' breach of fiduciary duty claims should be dismissed.

### D.    Plaintiffs State No Claim Of "Gross Negligence And Mismanagement"

Because mismanagement claims (like breach of fiduciary duty claims) implicate the internal affairs of a business, they are governed by the law of the state of organization – here, Delaware.  See N.Y. P'ship Law § 121-901 ("the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs"); Lee v. Marsh & McLennan Cos., 17 Misc. 3d 1138(A) (table), 2007 WL 4303514, at *4-5 (Sup. Ct. Nassau County Dec. 7, 2007) (applying Delaware law to mismanagement claim).  Delaware law, however, does not recognize an independent tort of gross negligence and mismanagement.  See In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 114 n.6 (Del. Ch. 2009).  As the Delaware Court of Chancery has explained, "such claims are treated as claims for breach of fiduciary duty."  Id.  Accordingly, for

---

*(cont'd from previous page)*
1987); U S West Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 344 (S.D.N.Y. 1992); Koch v. Greenberg, No. 07 Civ. 9600, 2008 WL 4450273, at *2-3 (S.D.N.Y. Sept. 30, 2008).

the reasons discussed above and in the State Law Brief, plaintiffs' gross negligence and

mismanagement claim should be dismissed along with their breach of fiduciary duty claim.[35]

### E.    The LPAs Preclude Plaintiffs' Unjust Enrichment Claim

In Count VII of the Complaint, plaintiffs allege that TPI was "unjustly enriched" by fees and

other payments it received from the Funds.  (Compl. ¶¶ 233-35.)  For the reasons set forth in

Section V(D) of the State Law Brief, which is incorporated herein by reference, this claim is

precluded by the express contractual provisions in the LPA governing payment of the fees at

issue.[36]  And plaintiffs fare no better with the claim (Compl. ¶¶ 233-35) that the other Tremont

Defendants were unjustly enriched by any payments TPI may have made to those parties.  See

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL

23018888, at *17 (S.D.N.Y. Dec. 22, 2003) (contracts governing payments preclude unjust

enrichment claims against all recipients – even those with whom plaintiffs did not personally

contract), aff'd, 110 F. App'x 191 (2d Cir. 2004).  Plaintiffs' claims against the Tremont Defendants

other than TPI further fail because those defendants did not "receive any money, property or

services" directly from the plaintiffs or the Funds.  Bello v. New Eng. Fin., 3 Misc.3d 1109(A)

(table), 2004 WL 1305515, at *7 (Sup. Ct. Nassau County May 20, 2004).

### F.    Plaintiffs Cannot Demonstrate That The Tremont Defendants Proximately Caused Their Losses

As demonstrated in Section V(A) of the State Law Brief, each of plaintiffs' claims against

the Tremont Defendants fails for the additional reason that the Tremont Defendants did not

---

[35]    Even if plaintiffs' claim was construed as one for "gross negligence" under New York law, it still would fail to state a claim.  As shown elsewhere in this brief and the State Law Brief, plaintiffs have not demonstrated the kind of intentional wrongdoing required under New York law to state a claim of gross negligence.  See, e.g., Indus. Risk Insurers, 387 F. Supp. 2d at 306-08 (dismissing claim for failing to meet the extraordinarily high standards for pleading gross negligence under New York law).

[36]    (Compl. ¶¶ 54, 76; Broad Market LPA (Trans. Decl. Ex. B), ¶ 3.13; Prime Fund LPA (Trans. Decl. Ex. C), § 2.3; XL Fund LPA (Trans. Decl. Ex. D), § 2.3; Market Neutral LPA (Trans. Decl. Ex. A), § 2.3).)

proximately cause plaintiffs' injuries; Madoff did.  In their Complaint, plaintiffs concede that the immediately effective cause of their losses was Madoff's theft of the assets entrusted to him. (Compl. ¶¶ 43-47, 51.)  That intentional criminal act was a "superseding and intervening event[] breaking [any alleged] chain of causation" between the Tremont Defendants and plaintiffs' losses. Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law).  Absent special circumstances not present here, "no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party."  Henry v. Merck & Co., 877 F.2d 1489, 1492 (10th Cir. 1989);  accord Ward v. State, 81 Misc. 2d 583, 588, 366 N.Y.S.2d 800 (Ct. Cl. 1975).

## CONCLUSION

For the reasons stated, the Tremont Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
May 20, 2009

Respectfully submitted,

  /s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Susan L. Saltzstein (Susan.Saltzstein@Skadden.com)
Michael H. Gruenglas (Michael.Gruenglas@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc., Tremont Group Holdings, Inc., Tremont Capital Management, Rye Investment Management, Robert Schulman, Rupert Allan and Jim Mitchell