UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW, and INSURANCE LITIGATION | : : : : | Master File No.: 08 Civ. 11117 (TPG) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| This Document Relates to:  All Actions | : : | ECF CASE Electronically Filed |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# THE TREMONT DEFENDANTS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF PARTIAL SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS TO SETTLEMENT


Seth M. Schwartz
Jason C. Vigna
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont (Bermuda) Limited,
Tremont Capital Management, Inc.,
Rye Investment Management,
Robert I. Schulman, Rupert A. Allan,
Harry Hodges, James Mitchell,
Lynn O. Keeshan, Patrick Kelly,
Stephen Thomas Clayton, Stuart Pologe
and Cynthia J. Nicoll

The Tremont Defendants[1] respectfully submit this memorandum: (i) in support of final approval of the proposed partial settlement (the "Settlement") of these consolidated actions (the "Action") and (ii) in response to certain objections to the Settlement submitted on behalf of certain members of the proposed plaintiff Settlement Class.[2]

## PRELIMINARY STATEMENT

Tremont has several meritorious defenses to every claim asserted against it in this Action, including threshold legal defenses that are dispositive of the litigation. See, e.g., In re Kingate Mgmt. Ltd. Litig., 09 Civ. 5386, 2011 WL 1362106 (S.D.N.Y. Mar. 30, 2011) (holding that putative class action claims against Tremont are barred by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f)(1)); Zutty v. Rye Select Broad Market Prime Fund, L.P., No. 113209/09, slip op. (Sup. Ct. N.Y. County Apr. 20, 2011) (holding that investors lack standing to assert claims against Tremont other than fraud, that provisions in the funds' limited partnership agreements exculpate Tremont from liability for acts that were not knowingly wrongful and that plaintiffs failed to allege facts sufficient to show that Tremont made any false statement with the intention of defrauding investors).

Nonetheless, Tremont has entered into the Settlement in furtherance of its objective to maximize the recoveries available to investors. Tremont is in a wind-up mode and has no interest in holding back any money that rightfully belongs to its investors. Continued litigation is counterproductive because it can only reduce the amount available to distribute to plaintiffs and members of the proposed Settlement Class.

---

[1] The Tremont Defendants (also referred to herein as "Tremont") are: Tremont Partners, Inc., Tremont Group Holdings, Inc., Tremont (Bermuda) Limited, Tremont Capital Management, Inc., Rye Investment Management, Robert I. Schulman, Rupert A. Allan, Harry Hodges, James Mitchell, Lynn O. Keeshan, Patrick Kelly, Stephen Thomas Clayton, Stuart Pologe and Cynthia J. Nicoll.

[2] Unless otherwise defined herein, capitalized terms have the same meanings as in the Settling Parties' Stipulation of Partial Settlement (Dkt. No. 392-1).

The Settlement should be approved and the objections overruled.

## ARGUMENT

**I. THE PARTIES MAY SETTLE CLAIMS RELATING TO ALL TREMONT-MANAGED FUNDS THAT INVESTED WITH MADOFF**

The named plaintiffs in this Action have asserted claims seeking recoveries on behalf of *all* persons who invested in hedge funds managed by Tremont and allegedly suffered damages as a consequence of Bernard Madoff's Ponzi scheme. (See, e.g., Dkt. No. 66 ("Securities Action" Compl.) ¶¶ 20, 22, 44 (all "Tremont Funds are named . . . to the extent they invested with Madoff and incurred losses thereby").) Nevertheless, objector Lakeview Investments, LP ("Lakeview") argues that the named plaintiffs lack standing to assert claims on behalf of investors in nine Tremont-managed hedge funds in which the named plaintiffs did not themselves invest. (See Dkt. No. 489 (Lakeview's Objections to Motion To Approve Settlement ("Lakeview Opp'n")) at 5-10.) According to Lakeview, the purported absence of standing bars the named plaintiffs from consenting to the release of the claims asserted in the Action pertaining to investments with Madoff made by those nine funds. (See id.) Lakeview's argument fails as a matter of law.

**A. Plaintiffs Have Standing To Assert Class Claims on Behalf of All Tremont Investors**

The essence of Lakeview's argument is that plaintiffs cannot serve as class representatives of investors in the nine funds, even if all of those investors allegedly suffered the same alleged harm as the named plaintiffs. (See Dkt. No. 489 (Lakeview Opp'n) at 5-10.) While Lakeview contends that the funds through which plaintiffs invested lack a "common structure, organization or purpose" with all other Tremont-managed funds (id. at 5-6), Lakeview identifies no material differences between the funds, much less attempts to explain how any such

2

difference shows that the interests of all investors are not aligned.[3]  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 106-07 (2d Cir. 2005) (lead plaintiffs may assert claims on behalf of absent class members with whom they share an "alignment of interests").[4]

Courts repeatedly have permitted plaintiff-investors to assert class claims on behalf of investors in other, similarly situated funds.  See Hicks v. Morgan Stanley & Co., 01 Civ. 10071, 2003 WL 21672085, at *5 (S.D.N.Y. July 16, 2003) (rejecting argument, like Lakeview's here, that named "plaintiffs lacked standing to represent a class that purchased a second fund"); In re Dreyfus Aggressive Growth Mut. Fund Litig., 98 Civ. 4318, 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000) (holding that "class representatives need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security"); Maywalt v. Parker & Parsley Petroleum Co., 147 F.R.D. 51, 57 (S.D.N.Y. 1993) (finding that "Plaintiffs' claims are typical of those of the Class, including the claims of those who invested in the two limited partnerships in which the named plaintiffs did not invest").  To be sure, as Lakeview observes, a number of courts have refused to permit putative class

---

[3] In fact, each of the "Tremont" Funds that Lakeview argues should be excluded from the Settlement were exposed to Madoff only through investments those funds made in Tremont-managed "Rye" Funds whose assets were entrusted to Madoff or otherwise linked to his performance.  Lakeview does not and cannot dispute that named plaintiffs invested in each of those Rye Funds.  (See Dkt. No. 65 ("State Law" Compl.) ¶¶ 15-25, 48-53, 77-104, 417, 422-30; Dkt. No. 66 ("Securities Law" Compl.) ¶¶ 8, 9, 12-16, 41-42; Dkt No. 233 (stipulated order adding additional Rye Fund investor as named plaintiff in the "State Law" action).)  Accordingly, the Settling Plaintiffs undoubtedly would contend that the interests of the named plaintiffs and all other investors in Madoff-affected funds managed by Tremont are aligned because all such investors were injured, if at all, by the defendants' same allegedly wrongful failure to discover Madoff's fraud before he confessed to it.

[4] Contrary to Lakeview's suggestion (Dkt. No. 489 (Lakeview Opp'n) at 10-11), where, as here, lead plaintiffs share an alignment of interests with other investors, they may settle and release all claims arising out of the facts alleged, including claims not specifically pled in the complaints (such as claims arising under California's securities laws).  See Wal-Mart Stores, 396 F.3d at 108-09; accord TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982) (affirming release of all potential class and derivative claims held by class members and company in which they invested, holding, "in order to achieve a comprehensive settlement . . ., a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action").

3

representatives to represent the interests of shareholders of funds in which the plaintiffs did not invest.  (See Dkt. No. 489 (Lakeview Opp'n) at 8.)  Those cases are distinguishable, however, because there, in contrast to this Action, plaintiffs could not adequately allege or show a common course of wrongful conduct causing the same alleged harm to all investors, regardless of the fund in which they invested.[5]

In all events, plaintiffs' standing to sue on behalf of investors in other Tremont-managed funds presents, at the very least, a litigable legal issue in this Action.  Consequently, it plainly is one of the many issues that may be compromised by means of this Settlement.  See, e.g., W. Va. v. Chas. Pfizer & Co., 440 F.2d 1079, 1086-87 (2d Cir. 1971) ("[I]n reviewing the compromise, this court need not and should not reach any dispositive conclusions on the . . . unsettled legal issues which the case raises . . . .  The very purpose of a compromise is to avoid the determination of sharply contested . . . issues[.]").

### B. Each of the Funds Has Duly Authorized the Settlement of All Claims that Have Been or Could Be Brought on Their Behalf

The derivative claims sought to be settled on behalf of all seventeen Settling Funds may be released for the separate and equally dispositive reason that the funds' respective general partners and boards of directors have approved the Settlement.  (See Dkt. No. 392-1 (stipulation of settlement signed on behalf of each Settling Fund).)  Because derivative claims are claims that, by definition, belong to the funds, see, e.g., Daily Income Fund, Inc. v. Fox, 464

---

[5] Ironically, if accepted, the logic of Lakeview's objection would deprive Lakeview of standing to object here.  It is undisputed that Lakeview invested in just two funds – namely Rye Select Broad Market Fund, L.P. and Rye Select Broad Market XL Fund, L.P.  (See Dkt. No. 489 (Lakeview Opp'n) at 3.)  It also is uncontested that several of the lead plaintiffs in this Action also invested in those two funds.  (See Dkt. No. 65 ("State Law" Compl.) ¶¶ 16, 22, 96, 422); Dkt. No. 66 ("Securities Law" Compl.) ¶ 18; Dkt. No. 233 (stipulated order adding additional plaintiff to "State Law" action).)  Thus, because there is complete overlap between the funds purchased by lead plaintiffs and Lakeview, Lakeview's standing objection pertains only to funds in which it did *not* invest and as to which it would lack standing to appear in this Action if its standing objection to the Settlement were credited by the Court.

4

U.S. 523, 528 (1984), the managements of the funds are authorized to settle those claims. See id. at 533 n.9; see also Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 660 F.2d 9, 18-19 (2d Cir. 1981) ("The corporation has the power to release its claims whether asserted in the complaint or not.").

In Wolf v. Barkes, 348 F.2d 994 (2d Cir. 1965), for example, in connection with employment separation agreements, a corporate employer unilaterally released all potential claims it had against certain of its former officers, including but not limited to derivative claims brought by a company shareholder against some of the same former corporate employees. See id. at 995. Judge Friendly held that the releases were well within the company's power to grant, observing that "[n]o one would contend that a corporation could not negotiate a release of corporate claims, even against insiders, before a derivative suit was started. The corporation's interest in achieving a favorable settlement does not cease because derivative litigation has begun[.]" Id. at 997.

The Wolf ruling is directly applicable here. In exchange for the Settling Funds' release of their claims against Tremont, Tremont has agreed to release, among other things, its claims for indemnification of the expenses it has incurred in this litigation, a contractual right expressly provided to Tremont under the provisions of the Settling Funds' limited partnership and investment management agreements. (See Dkt. No. 392-1 (stipulation of settlement) § 4.2.) Given the costs of this litigation to date and the potential cost of any additional litigation pursued by opt-outs, the value of Tremont's release of its right of indemnification is substantial, providing more than adequate consideration for the Settling Funds' release of their claims against Tremont

5

pursuant to the Settlement.[6]  Accordingly, Lakeview's objection to the Settling Funds' releases should be overruled.

## II. THE CLAIMS OF JOHN DENNIS ARE IRRELEVANT

Objectors FutureSelect Portfolio Management, Inc., FutureSelect Prime Advisor II LLC ("FS Prime"), Merriwell Fund L.P. and Telesis IIW LLC (together, "FutureSelect") raise the same standing objection raised by Lakeview, although it is directed solely to a single lead plaintiff – John Dennis.  (See Dkt. No. 459 (FutureSelect's Objection to Fairness, Reasonableness and Adequacy of Settlement) at 1-2.)  In that connection, FutureSelect argues that Mr. Dennis lacks standing to assert "double derivative" claims on behalf of FS Prime and Rye Select Broad Market Prime Fund, L.P. (the "Prime Fund"), the Rye Fund in which FS Prime invested, because FS Prime itself has asserted claims against Tremont in Washington.  (See id.)

While far from clear, FutureSelect's argument appears to be that the parties to the Settlement cannot settle the derivative claims that have been or could be brought on behalf of the Prime Fund because Mr. Dennis may be an inadequate derivative representative of FS Prime in this case.  As shown above, FutureSelect is wrong because the Prime Fund has authorized the Settlement of all claims it may have arising out of the fund's Madoff-related investments, including all the Madoff-related claims that have been or could have been asserted on its behalf

---

[6] This is not a case like National Super Spuds, Inc. v. New York Mercantile Exchange, 660 F.2d 9 (2d Cir. 1981), cited by Lakeview, in which a settlement agreement purported to release, "at no cost," unique direct claims held by an individual who fell outside the definition of the settling class at issue. Id. at 17-19 & n.6 & n.10.  Here, no objector (including Lakeview) claims to fall outside the definition of the Settling Class, and consideration of at least a cumulative $100 million is being paid to all participating holders of direct claims, and additional consideration is being paid for the release of claims belonging to the Settling Funds themselves.  See Wal-Mart Stores, 396 F.3d at 111-12 (ruling that holding of National Super Spuds is inapplicable where, as here, a settlement objector falls within the definition of the proposed settlement class and, if it participates, will receive consideration for the release of its purported direct claims).  Moreover, in National Super Spuds, Judge Friendly acknowledged that "[t]he corporation has the power to release [derivative] claims whether asserted in the complaint or not." Id., 660 F.2d at 19.  Thus, contrary to Lakeview's suggestion, National Super Spuds has no bearing on the settlement of the derivative claims at issue here.

6

by FS Prime.  Moreover, Mr. Dennis is only one of six named plaintiffs who invested directly or indirectly in the Prime Fund and asserted Madoff-related claims on behalf of the fund or its investors.  (See Dkt. No. 65 ("State Law" Compl.) ¶¶ 15-19, 21-24, 86-88, 422-29; Dkt. No. 66 ("Securities Law" Compl.) ¶ 9.)  Every one of those named plaintiffs at least arguably has standing to assert claims on behalf of the Prime Fund.  See Fed. R. Civ. P. 23.1.  Thus, any claims asserted on behalf of the Prime Fund, either directly or indirectly (through a double-derivative suit), may be settled pursuant to the Settlement.

### III. THE NOTICE PROVIDED ALL REQUIRED INFORMATION CONCERNING THE VALUE OF THE SETTLEMENT

There also is no merit to the objection of Madelyn Haines and Paul Zamrowski (together, "Haines") that the Notice of Settlement authorized by this Court (Dkt. No. 419, Ex. A2 (the "Notice")) fails to "accurately describe what members receive pursuant to the Settlement[.]" (Ex. to May 8, 2011 Letters of Madelyn Haines and Paul Zamrowski Containing Their Objection to Class Notice ("Haines Opp'n" (no Dkt. No.)) at 1.)

In reality, the Notice and other documents provided to all putative members of the Settlement Class completely and accurately describe what each Settling Fund investor who participates in the Settlement will receive:

    1.    A share of the "Gross Settlement Fund," which consists of –

        (a)    an initial contribution by the settling defendants of $100 million;

        (b)    50% of the aggregate actual recovery (whether received by way of judgment or settlement), if any, by the Settling Defendants with respect to the fidelity bonds at issue in the coverage litigation captioned Massachusetts Mutual Life Insurance Company v. Certain Underwriters at Lloyds of London Subscribing to Bond Numbers B0391/FD020720g and B0391/FD020730g, C.A. No. N10C-11-219 (FSS) (Del. Super. Ct.), after the fees and expenses incurred in pursuing the claims brought in that litigation and in the

                predecessor case in the Delaware Court of Chancery, including but not limited to the fees and expenses charged by Perkins Coie LLP, Potter Anderson & Corroon LLP, any discovery or document management vendor retained in connection with that litigation, and any expert witness or consultant retained in connection with that litigation, have been deducted (the "Fidelity Bond Recovery");

(c)      all funds remaining in Tremont Group Holdings, Inc. after completion of the wind down of its and its subsidiaries' operations (the "Remaining Tremont Funds");

(d)      any recovery from claims assigned to the Gross Settlement Fund by the Rye Funds and Tremont Funds against Bank of New York Mellon, KPMG LLP (and/or its affiliates) and Ernst & Young LLP (and/or its affiliates) (the "Assigned Claims"); and

(e)      interest that may accrue thereon; and

2.      A share of the "Fund Distribution Account," which consists of –

(a)      all amounts remaining in the Rye Funds after resolution of the funds' claims in or relating to proceedings initiated by the trustee ("Trustee") appointed pursuant to the Securities Investor Protection Act to liquidate the estate of Bernard L. Madoff Investment Securities LLC and any other matters required to be resolved in the ordinary course of the funds' business; and

(b)      all other amounts the Tremont Funds would otherwise be entitled to from the Fund Distribution Account as a result of the Tremont Funds' investments in the Rye Funds.

(See Dkt. No. 419-2, Ex. A2 (Notice) at 17 and throughout.)[7]

With specific reference to the Gross Settlement Fund, the Notice explains that amounts referenced in items 1(b), (c), (d) and (e) above are "expected" to augment the $100

---

[7] The Notice further explains that, "[i]n exchange for receiving the benefits of the Settlement, you will be prohibited from bringing a lawsuit against any of the Settling Defendants based on allegations relating to the Released Claims."  (Dkt. No. 419-2, Ex. A2 (Notice) at 20.)

million to be paid by the Settling Defendants, but provides no assurance that they will.[8] Moreover, in estimating the percentage of claimed losses to be recovered by each member of the Settlement Class, the Notice "*assumes that no additional monies will be added to the Gross Settlement Fund from the Remaining Tremont Funds, the Assigned Claims, or the Fidelity Bond Recovery*." (Dkt. No. 419-2, Ex. A2 (Notice) at 5, 6 (emphasis added).) Nonetheless, Haines argues that the Notice is misleading because it allegedly creates a false impression regarding the prospects for recovery above $100 million. (See Haines Opp'n at 2-4.) In particular, Haines complains that the Notice is inadequate because it purportedly makes no reference to other related litigation pending against Tremont and the Settling Funds that may reduce the additional amounts otherwise available for payment into the Gross Settlement Fund and Fund Distribution Account.[9] (See id.) Haines's argument is meritless.

        Haines identifies nothing in the Notice that promises additional recoveries or that otherwise inaccurately describes the Settlement consideration. It is well-established that a notice need only give a "'general description'" of the settlement consideration, Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1983) (citation omitted), and need not analyze all contingencies that could affect the final settlement value. See, e.g., In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 60, 66 (S.D.N.Y. 1993). For that reason, the Second Circuit Court of Appeals has specifically rejected the same argument made by Haines here that a settlement notice must disclose the existence of other lawsuits pending against the settling defendants. See Wal-Mart Stores, 396 F.3d at 115-16.

---

[8] No such "expectation" is expressed with respect to the Fund Distribution Account.

[9] The Notice states generally that "numerous suits" addressing the same wrongdoing alleged in the Action have been filed "in the Southern District of New York, and elsewhere." (Dkt. No. 419-2, Ex. A2 (Notice) at 14.)

To the extent that the Notice could be construed as disclosing an expectation of Settlement consideration in excess of $100 million, Haines does not and cannot show that the Settling Parties lack such an expectation. For example, as the Notice discloses, several of the Settling Defendants are engaged in coverage litigation with their liability insurers which, if successful, could significantly increase the amount deposited into the Gross Settlement Fund.

Because the facts pertinent to the Settlement are accurately disclosed in the Notice, putative members of the Settlement Class may determine for themselves whether the prospects for additional recovery are sufficiently attractive to warrant their participation in the Settlement. See, e.g., Weinberger, 698 F.2d at 70-71 (holding that notice is sufficient where it "'fairly apprise[s]' prospective class members of the class action's pendency, the relevant terms of the proposed settlement, and their options in connection with that case" (citation omitted)).

## IV. THE SETTLEMENT DOES NOT PREJUDICE THE RIGHTS OF INVESTORS IN "SUB-FEEDER" FUNDS SUCH AS FOREDESTINE

2001 Frederick DeMatteis Revocable Trust, DeMatteis FLP Assets, LLC, Ronald Gallatin, John D. Case and Kenneth Witover (together, the "Foredestine Investors") allege that they are investors in Foredestine LLC, which is one of many "sub-feeder" funds that invested in one or more of the Rye or Tremont Funds and will receive recoveries if the Settlement is approved. (See, e.g., Dkt. No. 472 (Objection of 2001 Frederick DeMatteis Revocable Trust to Proposed Settlement) at 1.) The Foredestine Investors concede that, since they themselves are not investors in the Rye or Tremont Funds, they are not members of the Settlement Class, as defined in the Settlement, and, therefore, lack standing to object to the Settlement. (See, e.g., id. at 2.) Nonetheless, they purport to object to the extent the Settlement "*may*" prejudice their asserted "rights to pursue their separate claims against Foredestine LLC" and its officers for their alleged "misconduct in managing the Foredestine Funds." (Id. (emphasis added).) Because the

10

Foredestine Investors have identified no provisions of the Settlement that could, in fact, prejudice their purported rights, their hypothetical objection should be disregarded.

## CONCLUSION

For the foregoing reasons, the reasons stated in the Memorandum of Law in Support of Settling Class Plaintiffs' Motion for Final Approval of Partial Settlement (Dkt. No. 437) and the reasons stated in the other memoranda filed with the Court on this date, the Tremont Defendants respectfully request, pursuant to Rules 23, 23.1, 54 and 58 of the Federal Rules of Civil Procedure, that the Court enter the judgment proposed in this Action (Dkt. No. 392-2, Ex. B), dismissing and releasing the claims against them on the terms set forth in the Stipulation of Partial Settlement executed February 25, 2011 (Dkt. No. 392-1).

Dated: New York, New York
May 25, 2011

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont (Bermuda) Limited,
Tremont Capital Management, Inc.,
Rye Investment Management,
Robert I. Schulman, Rupert A. Allan,
Harry Hodges, James Mitchell,
Lynn O. Keeshan, Patrick Kelly,
Stephen Thomas Clayton, Stuart Pologe
and Cynthia J. Nicoll